UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BERLIN FINANCIAL LTD., et al.,

      Plaintiffs,                                 Case No. 2:07-cv-442
                                                    JUDGE GREGORY L. FROST
      v.                                        Magistrate Judge Norah McCann King

MPW INDUSTRIAL
SERVICES GROUP, INC., et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion to dismiss Plaintiffs' First Amended Complaint (Doc. # 20), Plaintiff's memorandum in opposition (Doc. # 26), and Defendants' reply memorandum (Doc. # 27). For the reasons that follow, this Court finds Defendants' motion well taken in part and dismisses this action.

### I. Background

This case presents a putative class action premised upon alleged violations of the Securities Exchange Act of 1934 ("the Act"). Plaintiffs, Berlin Financial Ltd., Berlin Capital Growth, LP, Thomas Berlin, and Kenton Bowen, are all former minority shareholders of Defendant MPW Industrial Services Group, Inc. ("MPW"). MPW is an Ohio corporation based in Licking County, Ohio, that provides industrial cleaning, facility maintenance and support services, industrial container cleaning, and industrial process water purification. Defendant Monte R. Black is the founder, chairman of the board, chief executive officer, president, and majority shareholder of MPW, while Defendant Robert J. Valentine is MPW's vice president, chief financial officer, chief operating officer, secretary, and treasurer.

From December 1997 until late September 2006, MPW was a publicly traded company. While MPW was a public company, Black and his immediate family members owned or controlled approximately 59% of MPW's shares. They wanted to take MPW private and transferred these shares to a new corporation named Noir Acquisition, Inc. in order to facilitate MPW's transition to a privately held company.[1] After reportedly reviewing pre-offer share prices and other information, including a fairness opinion obtained from valuation firm Stout, Risius, Ross, Inc., a special committee of MPW's board of directors accepted Black's offer of $2.55 per share of MPW stock.

MPW therefore sent its shareholders an August 2006 proxy statement regarding the proposed merger. A shareholder meeting was then held in mid-September 2006, and the votes favored the transaction. On September 26, 2006, MPW went private.

Plaintiffs assert that the evaluation of the proposed transaction by the special committee and the minority shareholders was tainted because they relied on incomplete information as a result of fraudulent disclosures. Specifically, Plaintiffs contend that Defendants failed to disclose allegedly material facts, such as an accurate valuation of MPW's holdings in Pentagon Technologies Group, Inc. ("Pentagon"), a company in which MPW held a 22% interest, attempts to sell Pentagon, a decision to delay selling Pentagon in order to achieve a greater sale price, and MPW's accurate earnings for the fourth quarter of 2006. According to Plaintiffs, such alleged misrepresentations misled a sufficient number of minority shareholders into voting for the going-

---

[1] Defendants' briefing identifies the company as Noir Acquisition Corp. (Doc. # 20-2, at 14.) Because under a Rule 12(b)(6) analysis the Court must accept the factual allegations of the amended complaint as true, the Court uses here the name provided in the pleading: Noir Acquisition, Inc. (Doc. # 15 ¶ 18.)

private transaction, which enabled Defendants to complete the transaction and realize profits much greater than that reported to the shareholders. Plaintiffs thus contend that they received a share price of less than what they would have received if Defendants had fully disclosed all the material facts.

In a four-count amended complaint, Plaintiffs, on behalf of a putative class of former minority shareholders, assert the following causes of action: violation of § 14(a) of the Act, codified at 15 U.S.C. § 78n(a); breach of fiduciary duty; common law fraud; and control person liability under §20(a) of the Act, codified at 15 U.S.C. § 78t(a). (Doc. # 15 ¶¶ 62-80.) Defendants have moved to dismiss the amended complaint. (Doc. # 20.) The parties have completed briefing on the motion, which is now ripe for disposition.

## II. Discussion

### A. Standard Involved

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6), which requires an assessment of whether Plaintiffs have set forth claims upon which this Court may grant relief. Under the United States Supreme Court's recent articulation of the analytic standard involved in applying this rule, this Court must construe the amended complaint in favor of Plaintiffs, accept the factual allegations contained in the amended complaint as true, and determine whether Plaintiffs' factual allegations present plausible claims. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Luckey v. Butler County*, No. 1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (characterizing *Bell Atlantic* as requiring that a complaint " 'state a claim to relief that is plausible on its face' " (quoting *In re OSB Antitrust Litigation*, No. 06-826, 2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))). To be

considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 127 S. Ct. at 1974; *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *Tucker v. Middleburg-Legacy Place, LLC*, No. 1:07CV2015, 2007 WL 3287359, at *2 (N.D. Ohio Nov. 5, 2007). Thus, "[d]ismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised." *Id.* (citing *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485 (6th Cir. 1990)).

### B. Analysis

In Count I of the amended complaint, Plaintiffs assert a claim under § 14(a) of the Act, which provides:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

15 U.S.C. § 78n(a). There is a private right of action under this statute and its related SEC Rule 14a-9, set forth at 17 C.F.R. § 240.14a-9. *Rauchman v. Mobil Corp.*, 739 F.2d 205, 208 (6th Cir. 1984).

Defendants argue that dismissal of this federal claim is warranted as a matter of deference to Ohio's appraisal statute, Ohio Rev. Code § 1701.85, which provides the means by which disgruntled shareholders can seek additional value for their shares. In discussing the state statute, the Supreme Court of Ohio has explained that "[u]nder the terms of R.C. 1701.85, a shareholder who dissents from a merger or certain other enumerated corporate transactions is granted the right to seek payment of the 'fair cash value' of the shares of the corporation."

4

*Armstrong v. Marathon Oil Co.*, 32 Ohio St.3d 397, 513 N.E.2d 776, paragraph one of the syllabus (1987).  Notably, the state court has also stated:

> [T]he statutory proceeding under R.C. 1701.85 is the sole means for determining the value of a dissenter's shares in the present case. However, this is not to say that causes of action which seek compensation other than the value of a dissenter's shares of stock are not maintainable. Provable injury under whatever theory utilized is compensable so long as it does not seek to overturn or modify the fair cash value determined.  Such theory may not, however, be joined to the R.C. 1701.85 proceeding, but is a separate cause of action subject to the applicable statute of limitations and *res judicata.*

*Id.* at 422, 513 N.E.2d at 798.  This characterization leads this Court to conclude that, *at least* in cases in which a plaintiff seeks other than simply added share value, § 1701.85 does not foreclose other claims.

To support their contention that the state statute is the sole remedy available to Plaintiffs, Defendant cite to a number of cases that they characterize as precluding federal causes of action that evade a state's appraisal statute.  *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977); *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078 (2d Cir. 1977);  *Nutis v. Penn Merch. Corp.*, 610 F. Supp. 1573 (E.D. Pa. 1985); *Hundahl v. United Benefit Life Ins. Co.*, 465 F. Supp. 1349 (N.D. Tex. 1979).  None of these cases ultimately support dismissal here.

*Santa Fe*, for example, is readily distinguishable insofar as it expressly did *not* involve allegations of misleading representations or omissions in the proxy statements.  *See Santa Fe Indus., Inc.,* 430 U.S. at 467 (amended complaint relied on proxy statement information), 474 (recognizing that shareholders "were furnished with all relevant information on which to base their decision").  The other cases cited by Defendants do involve specific attacks on proxy statements, but these cases also fail to support dismissal here because of the nature of the proxy statement content at issue.

For example, in *Hundahl v. United Benefit Life Insurance Co.*, minority shareholders claimed that Defendants had failed to disclose various stock manipulation acts and the accurate value of assets in their company's financial reports. 465 F. Supp. at 1354. The district court concluded that none of the alleged acts constituted a federal claim because they were simply acts of unfairness. Notably, the *Hundahl* plaintiffs had not filed under § 14(a), a violation of 15 U.S.C. § 78n(a), but instead had asserted a claim under such sections as § 10(b) of the Act, for a violation of 15 U.S.C. § 78j(b) and a related Securities Exchange Commission rule, and § 14(e) of the Act, for a violation of 15 U.S.C. § 78n(e). *Id.* at 1354.

Similarly, *Browning Debenture Holders' Committee v. DASA Corp.*, dealt with allegedly false and misleading statements related to proxy statements and purported breaches of fiduciary duty. 560 F.2d at 1080. That opinion did not address two claims under § 14(a), which had been previously dismissed in the earlier decision of *Browning Debenture Holders' Committee v. DASA Corp.*, 524 F.2d 811 (2d Cir. 1975). Notably, these dismissals for failure to state a § 14(a) claim were based only on plaintiffs' failure to claim monetary damages in connection with the § 14(a) claims, not because of a flaw in the allegations that the proxy statements were materially false and thus actionable under that provision of the Act. *Id.* at 816. The plaintiffs had impermissibly sought only declaratory relief under § 14(a) for moot claims. *Id.* Thus, neither of the *DASA Corp.* decisions compel dismissal here, where the claims extend beyond mere breach of fiduciary duty.

Finally, in *Nutis v. Penn Merchandising Corp.*, a district court addressed a failure to disclose in a proxy statement that the proposed payment per share was inadequate and the misrepresentation that the merger at issue was fair to the minority shareholders. 610 F. Supp. at

6

1582.  That court explained that these alleged failures simply did not constitute actionable misrepresentations under federal securities law.  *Id.*  Thus, at best, Defendant's authority stands for the unremarkable proposition that absent actionable misrepresentation, a simple breach of fiduciary duty arising from corporate misconduct–i.e., unfair treatment–will not support a federal claim.

In contrast to Defendants' case law, the amended complaint *sub judice* is predicated on alleged misrepresentations that are not traditionally relegated to state law.  Plaintiffs target purported disclosure violations that they assert tainted the proxy statements.  Although the unfairness of a conversion price will not support a claim of constructive fraud under § 14(a), *Browning Debenture Holders' Comm.*, 560 F.2d at 1084, it is well settled that § 14(a) provides a private cause of action arising from fraudulent proxy content.  *See Mills v. Electric Auto-Lite*, 396 U.S. 375 (1970); *J. I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964); *Browning Debenture Holders' Comm.*, 524 F.2d at 815.  Based on this theory of the case, Plaintiffs first request recision of the going-private transaction as the primary remedy, with an alternative request for damages for lost share value.  Plaintiffs' § 14(a) component of their case is thus more complex than Defendants' broad characterization recognizes; it is, to use Defendants' words, more than "simply dressing up as a federal proxy violation what is, in essence, a claim that Plaintiffs did not receive fair value for their shares."  (Doc. # 20-2, at 25.)

Plaintiffs' § 14(a) count therefore is closer to the type of claim addressed by the Fourth Circuit in *Lockspeiser v. Western Maryland Co.*, 768 F.2d 558 (4th Cir. 1985).  In *Lockspeiser*, a minority shareholder brought a claim under § 14(a) based on alleged material omissions from a merger notice accompanied by a proxy statement.  *Id.* at 559-60.  Applying the same basic

analysis to the shareholder's allegations in regard to both § 14(a) and § 10(b) of the Exchange Act, *id.* at 562, the court of appeals concluded that "[t]he allegations pertaining to these omissions distinguish this case from *Santa Fe Industries v. Green*" because the *Santa Fe* plaintiff had been furnished with all relevant information and, "[u]nlike the minority shareholder in *Santa Fe*, [the shareholder in *Lockspeiser*] is not basing his cause of action on inadequacy of price." *Id.* at 560.  The Fourth Circuit also stated that the shareholder claimed that the omitted information was "essential for a rational decision whether to accept the offer or seek an appraisal under state law." *Id.* at 561.

Like the Fourth Circuit, this Court recognizes that where, as here, a minority shareholder bases his § 14(a) action on an omission or misrepresentation of material fact in a proxy statement and does not seek only to attack the fairness of the offer price, a § 14(a) cause of action exists despite the existence of potential appraisal under state law.  Thus, while recognizing the non-dispositive teachings of *Santa Fe*, the Court must conclude that Defendants' argument in regard to § 1701.85 (which does not target the proxy misrepresentations at issue) is not well taken.  This means that, assuming for the moment that materiality exists and that no other issues mandate dismissal, Plaintiffs have stated a plausible claim upon which this Court can grant relief.

In regard to this last comment, the Court must note that the relevant allegedly material misrepresentations in *Lockspeiser* were the estimated amount of tonnage of coal reserves and the amount of standing board feet of timber held by the defendant company, two of the company's most valuable assets.  768 F.2d at 559, 560.  The Fourth Circuit drew a distinction between the omission of *facts* about the coal and timber reserves, as opposed to their *valuations*. *Id.* at 561.  The appellate court recognized this distinction in a subsequent case, noting that *Lockspeiser*

involved omitted facts and stating that "we distinguished [*Lockspeiser*] from cases which involve financial projections or asset valuations." *Walker v. Action Indus., Inc.*, 802 F.2d 703, 709 (4th Cir. 1986). This Court has assumed for purposes of the instant analysis–an inquiry only into whether a § 14(a) cause of action could exist and proceed in light of the state appraisal statute–that the misrepresentation here is indeed within the scope of § 14(a). The Court shall now turn to whether Plaintiffs' § 14(a) claim can survive Defendants' remaining attacks.

Defendants also argue that the § 14(a) claim must be dismissed because the alleged misrepresentations are not material and therefore not actionable under § 14(a) and the related Rule 14a-9. In making this argument, Defendants target the alleged omission of the value and potential sale of Pentagon. Additionally, Defendants focus on the manner in which Plaintiffs have pled the § 14(a) claim.

It is important to acknowledge here that, in addition to targeting the Pentagon disclosures, Defendants devote a portion of their briefing to arguing that the failure to disclose the fourth quarter of 2006 earnings is not an omission that is actionable under § 14(a). In their memorandum in opposition, Plaintiffs acknowledge that they have apparently committed mathematical errors in regard to the 2006 fourth quarter earnings and expressly represent that they are not relying on the fourth quarter earnings to support their § 14(a) claim. Instead, Plaintiffs state that "[a]ll of the plaintiffs' causes of action can be supported by MPW's failure to disclose the $10 million valuation of its interest in Pentagon, which is the crux of the plaintiffs' complaint." (Doc. # 26, at 10 n.1.) Accordingly, the survival of Plaintiffs' § 14(a) claim must turn only on the Pentagon valuation.

According to the amended complaint, MPW has stated in reports filed with the SEC that

9

its 22% interest in Pentagon has a zero value.  (Doc. # 15 ¶ 28.)  Plaintiffs also plead that the proxy statement materials indicated a $600,000 value for MPW's interest in Pentagon.  (Doc. # 15 ¶ 28.)  Plaintiff then plead that "[u]pon information and belief, the value of MPW's interest in Pentagon exceeds $10 million . . . ."  (Doc. # 15 ¶ 30.)  The amended complaint goes on to allege that Black and Valentine were aware of the difference in valuation, that the larger number would have increased share price, and that they did not disclose the information to valuation firm Stout, Risius, Ross, Inc.  (Doc. # 15 ¶ 31.)  The pleading also provides a general foundation for the factual representation of the valuation of at least $10 million.  (Doc. # 15 ¶ 32.)

Defendants attack the over $10 million valuation by targeting the manner in which it is supported and pled.  They assert that Plaintiffs' reliance on confidential sources for the increased valuation and sale information is insufficient by arguing that Plaintiffs have failed to plead with sufficient particularity as required by statute.  The relevant provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  *See also PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004) (noting statutory addition to Fed. R. Civ. P. 9(b)'s pleading with particularity requirements).  This requirement applies to § 14(a) claims.  *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144-45, 145 n.9, 160 (3d Cir. 2004) (citing *In re NAHC Sec. Litig.*, 306 F.3d 1314, 1329 (3d Cir. 2002)); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 585 (S.D. N.Y. 2007) (citing 15 U.S.C. § 78u-4(b)(1) in stating that "[i]n securities cases

where the plaintiff alleges that a defendant made an untrue statement of a material fact or omitted to state a material fact, the Private Securities Litigation Reform Act of 1995 ('PSLRA') imposes additional pleading requirements").

Paragraph 30 of the amended complaint avers that "[u]pon information and belief, the value of MPW's interest in Pentagon exceeds $10 million . . . ." (Doc. # 15 ¶ 30.) A subsequent paragraph then references two confidential sources to support these "upon information and belief" contentions. That paragraph, paragraph 32 of the pleading, reads:

> 32. The allegations in paragraph 30 are based upon information obtained by Plaintiff Kenton R. Bowen through a confidential source, and through a second confidential source who was and remains a managing director and senior analyst at Baird and Company. These conversations occurred after the going-private transaction which is the subject of this action. Baird is a regional investment banking firm, was the majority owner of Pentagon at the time that the defendants herein issued the proxy statement, and remains such today. Baird is one of the few investment firms that actively followed and reported on MPW's publicly-traded stock before and up until the going private transaction. The source had access to Baird's corporate finance department which confided that the firm had a 'book' out on Pentagon, which in the language of investment bankers means that offering memorandum had been prepared and circulated.

(Doc. # 15 ¶ 32.) The Court agrees with Defendants that this paragraph is less than ideal.

In regard to the first confidential source cited in paragraph 32, the Court must conclude that the amended complaint has wholly failed to state with particularity *any* facts that can support Plaintiffs' formation of their belief as to the $10 million valuation. Pleading with particularity such facts is important. *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 355 n.88 (S.D.N.Y. 2003) ("[C]learly indicating the facts that support allegations based on information and belief is critical under paragraph (b)(1). Not only must it be determined whether those facts are pled 'with particularity,' 15 U.S.C. § 78u-4(b)(1), but it must also be decided

11

whether those facts sufficiently support Plaintiffs' information and belief."). But in referencing the first source, the pleading simply states that "[t]he allegations in paragraph 30 are based upon information obtained by Plaintiff Kenton R. Bowen through a confidential source," without explaining any facts to provide the requisite context rendering that representation useful. (Doc. # 15 ¶ 32.) The only other sentence in paragraph 32 that pertains to the first source states that Bowen spoke with the source "after the going-private transaction which is the subject of this litigation." (Doc. # 15 ¶ 32.) The paragraph provides nothing to support the reliability of the first source and fails to set forth the specific information obtained from that individual.

This leaves the second confidential source as the only hope to salvage the pleading. Defendants attempt to discredit the pleading in regard to the second source in two ways. They first argue that because the original complaint "attributed the Pentagon valuation information solely to the first confidential source, a fair reading of the Amended Complaint is that the second confidential source supplied 'facts' relating to the existence of a 'book' on Pentagon–the only new averments in paragraph 32 of the Amended Complaint." (Doc. # 27, at 8-9.) Thus, Defendants conclude, "[i]t would appear . . . that the first confidential source is the sole basis for Plaintiffs' allegation that MPW's minority ownership interest in Pentagon was 'in fact' valued at $10 million." (Doc. # 27, at 9.)

The logic of this strained reasoning is notably dubious. The language of paragraph 32 makes clear that "[t]he allegations in paragraph 30 are based upon information obtained by Plaintiff Kenton R. Bowen through a confidential source, *and* through a second confidential source . . . ." (Doc. # 15 ¶ 32 (emphasis added).) The use of the conjunctive "and" makes the second source inclusive as support for the paragraph 30 allegations. In other words, this Court

looks at what Plaintiffs have pled now, in the amended complaint, not at what or how they pled in the original complaint, to determine what the amended complaint says. Defendants' argument assumes too much while crediting the amended complaint too little. There is no basis from the language of the second complaint to conclude that Plaintiffs did not intend for the second source to be at least *a* source of the $10 million-plus valuation information.

Defendants also argue that Plaintiffs' amended complaint impermissibly relies on the second confidential source because the pleading fails to distinguish what information was derived from this source, as opposed to from the first source, and because the Baird source's second-hand information is unreliable. These arguments fare better than Defendants' original-complaint contention.

Nothing in paragraph 32 indicates that the offering memorandum or Baird's "book" on Pentagon valued the company at an amount exceeding $10 million. Plaintiffs fail to even allege that the offering or book contained *any* valuation for Pentagon, much less the valuation upon which they rely; the paragraph 30 valuation could have come from the first confidential source. It is conceivable that the Baird material and the offering memorandum did contain the alleged valuation, but this mere possibility does not satisfy the statutory requirement that the amended complaint state with particularity all facts on which the valuation belief is formed. *See* 15 U.S.C. § 78u-4(b)(1).

Additionally, there is a significant problem with firsthand knowledge. The pleading indicates that the second source "had access to Baird's corporate finance department which confided [to the source various information]." (Doc. # 15 ¶ 32.) Presumably, the source spoke with an individual who worked in Baird's corporate finance department–he or she could not talk

13

to the department itself–and thereby learned that a "book" and offering memorandum existed. As Defendants note, the problem with this allegation is that it is second-hand information obtained from yet another unidentified source (literally described as the corporate finance department). *See California Pub. Employees' Ret. Sys.*, 394 F.3d at 148 (recognizing that a lack of pleading allegations regarding how or why confidential sources would have access to information is problematic because it leaves the court "to speculate whether the anonymous sources obtained the information they purport to possess by firsthand knowledge or rumor."). The lack of particularity in regard to the second source is thus troubling. *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d at 358 ("Where an allegation stems from only one or two sources, . . . it is important that they be identified with absolute particularity.").

Although paragraph 32's content need not state every fact upon which Plaintiffs rely, it does need to set forth with particularity sufficient facts to support the existence of the $10 million-plus valuation. The pleading here fails to meet this standard. As other courts have recognized,

> assessing the particularity of allegations made on information and belief necessarily entails an examination of the detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.

*California Pub. Employees' Ret. Sys.*, 394 F.3d at 147. Paragraph 32 fails to indicate the level of detail provided by the second confidential source, fails to state whether the Baird "book" and the offering memorandum contained the over-$10 million valuation, and fails to divulge any details regarding the corporate finance department source upon which the second source relied. The pleading also fails to support the reliability of the second source and his or her own source

within the corporate finance department.

Paragraph 32 of the amended complaint thus fails to present with particularity a sufficient foundation for the predicate information upon which Plaintiffs rely, the in-excess-of-$10 million valuation. As Defendants recognize in their reply memorandum:

> The Amended Complaint is devoid of any specific allegations regarding the purported valuation of Pentagon. There are no allegations indicating who purportedly calculated the value of Pentagon, their qualifications and job title, what information was used in performing the calculation, and whether the valuation was an "official" valuation or merely an estimate. Similarly, there are no allegations that "Baird's corporate finance department" informed the Plaintiffs' second confidential source that the value of MPW's minority ownership interest in Pentagon exceeded $10 million, let alone how, why, or even when that information was provided to the second confidential source.

(Doc. # 27, at 10.) Courts have echoed Defendants' concerns in § 14(a) cases. *See, e.g., In re Textainer*, No. C-05-0969 MMC, 2006 WL 1328851, at *5 (N.D. Cal. May 15, 2006) ("Plaintiff's conclusory allegations as to an unspecified analysis performed by an unnamed or otherwise identified consultant, and which fail to include any information about the consultant's qualifications, how the analysis was performed, or the data upon which the consultant relied, are inadequate under the PSLRA's heightened pleading standard.").

This Court shares the foregoing concerns and must therefore conclude that Plaintiffs' amended complaint fails to satisfy 15 U.S.C. § 78u-4(b)(1). Plaintiffs do not defend their second-source pleading against this conclusion; their memorandum in opposition notably omits discussion of this area in favor of simply defending the materiality of the $10 million-plus valuation and later defending other portions of the pleading regarding the fraud claim. But apart from the § 14(a) materiality question is the particularity issue. There may be a duty to disclose the $10 million-plus valuation under § 14(a)–or at least a duty to speak truthfully in making an

elective valuation statement in the proxy materials–and that statutory section can indeed provide a federal cause of action for misrepresentation. But without adherence to the heightened pleading requirements involved here, Plaintiffs' amended complaint cannot support the $10 million-plus valuation.

Thus, although a § 14(a) claim is possible even in light of Ohio's appraisal statute–and even if the $10 million valuation would indeed be material, a matter on which the Court need not opine–the Court must nonetheless dismiss Plaintiffs' § 14(a) claim pursuant to the PSLRA. *See* 15 U.S.C. § 78u-4(b)(3)(A) ("In any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraph[] (1) . . . are not met."); *In re Textainer*, 2006 WL 1328851, at *6 ("the Court finds plaintiff has not adequately amended the complaint to plead with the requisite particularity the source of his allegation . . . and, consequently, plaintiff's § 14(a) claim, to the extent it is based on such allegation, is subject to dismissal."). *See also Fidel v. Farley*, 392 F.3d 220 (6th Cir. 2004) (affirming dismissal of case for failure to plead with particularity); *In re Ford Motor Co. Sec. Litig., Class Action,* 381 F.3d 563 (6th Cir. 2004) (affirming dismissal for failure to state a claim based on a lack of particularity). Having reached this conclusion, the Court need not and does not address the merits of Defendants' remaining arguments for dismissal of the § 14(a) claim, such as the parties' debates over materiality and the availability of the remedy of rescission.

This leaves one federal claim for Plaintiffs. They assert in Count IV of the amended complaint a claim for control person liability. Under § 20(a) of the Act, a plaintiff can bring such a claim against any person who directly or indirectly controls any person liable for a predicate securities fraud under the Act, subject to a good faith exception. 15 U.S.C. § 78t(a).

16

Assuming *arguendo* that Plaintiffs can assert a § 20(a) claim against the same defendants named in their predicate § 14(a) claim, dismissal of the § 20(a) claim is nonetheless warranted. *See PR Diamonds, Inc.*, 364 F.3d at 697 n.4 ("Without deciding the question, we note that some authority suggests that a plaintiff may not be able simultaneously to assert both Section 10(b) and Rule 10b-5 claims and Section 20(a) claims against the same defendant.").

As the Third Circuit has held, "[t]he lack of any predicate violation of the Securities Exchange Act of 1934 compels dismissal of control person claims." *California Pub. Employees' Ret. Sys.*, 394 F.3d at 159. *See also In re Textainer*, 2006 WL 1328851, at *8. Because the Court has already dismissed Plaintiffs' § 14(a) claim, this Court must consequently dismiss Plaintiffs' § 20(a) claim as well. *See In re Kiethley Instruments, Inc. Sec. Litig.*, 268 F. Supp. 2d 887, 906 (N.D. Ohio 2002) (dismissing § 20(a) claim upon dismissal for want of particularity of underlying federal security law claim upon which control person liability claim was based).

Finally, Defendants correctly suggest that this Court, having dismissed Plaintiffs' federal claims, presumptively should not address any state law claims. *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1998))). Plaintiffs have failed to suggest any justification or alternative basis for exercising jurisdiction over their state law claims should the Court grant dismissal of their federal claims. The Court therefore expresses no opinion on the state law claims and dismisses these claims without prejudice.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss in regard to Plaintiffs' federal claims and on the limited grounds described herein.  (Doc. # 20.)  This leaves the issue of whether said dismissal is with or without prejudice.

Because Plaintiffs have already filed one amended complaint without curing the deficiencies of their pleading–and noting that they have *not* moved to amend their pleading–the Court concludes that in light of the Sixth Circuit's characterization of the purposes of the PSLRA, dismissal with prejudice as opposed to permitting amendment or dismissal without prejudice is warranted.  *See PR Diamonds, Inc.*, 364 F.3d at 698-700.  The Court in its discretion therefore **DISMISSES WITH PREJUDICE** Plaintiffs' federal claims.  *See id.* (discussing appropriateness of dismissal with prejudice); *see also Fidel*, 392 F.3d at 223, 236 (affirming dismissal with prejudice and indicating that "the PSLRA restricts the scope of Rule 15(a) in the context of securities litigation such that plaintiffs have more limited ability to amend their complaints").[2]

Additionally, the Court declines to exercise jurisdiction over Plaintiffs' state law claims and **DISMISSES** said claims **WITHOUT PREJUDICE**.  The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

---

[2] The Court notes that not all courts of appeals agree that the PSLRA affects Rule 15(a).  *See, e.g., ACA Fin. Guar. Corp. v. Advest, Inc.*, No. 07-1367, 2008 WL 104099, at *5-6 (1st Cir. Jan. 10, 2008) (holding that the PSLRA does not constrict the operation of Rule 15(a)).  In light of the circumstances of the instant case and the Sixth Circuit's prior discussion of the PSLRA, however, dismissal with prejudice of Plaintiffs' federal claims is the appropriate action here.

**IT IS SO ORDERED**.

        /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE